Good afternoon. Good morning, your honor. May it please the court, Stephen Fogdall for the appellants may have two minutes for rebuttal. Absolutely. Thank you. Your honors, I'd like to begin with the court's letter regarding the continuing viability of Washington versus Clem in light of recent Supreme Court decisions. In two respects, Clem is no longer viable. First, first the foundational assumption in Clem was that substantial burden under both RFRA and RLUPA had to be tied to pre-Smith First Amendment case law, specifically Sherbert and Thomas. And Justice Alito in his majority opinion in Hobby Lobby says explicitly that the definition of religious exercise in RLUPA and RFRA affected a complete separation from First Amendment case law. So the assumption that the substantial burden test must be tied to First Amendment case law was rejected explicitly in Hobby Lobby. So that's the first respect in which Clem is no longer viable. Second, that Clem assumes that there's a substantial, there's not a substantial burden unless the plaintiff is forced to violate his or her beliefs. Or change them. I'm sorry, what's that? Or change or modify them, I believe. Yes, change or modify and thereby violate belief. In other words, in essence, the government has to induce the plaintiff to do something their faith prohibits or prevent the plaintiff from doing something their faith requires. And the language of RFRA and RLUPA is that both statutes apply to any religious exercise whether or not central to or compelled. I was especially interested in this inquiry. I authored Clem, but I have come to have serious doubts that it is viable in the wake of Hobby Lobby, Holt, and Ramirez. I think the test for, the test is for substantial burden has been more than called into question. So I'm interested, very interested in hearing your response and it is consistent with at least my my own doubts. And it's also true here that Congress has explicitly told us that we need to construe statutes in favor of the broad protection of religious exercise, right? So what do we have here as an exercise by Davis, by Beckford, obviously a request to marry, to marry or the exercise would be to marry. How is that religious? And to what, or is the answer to my question really? This is not for you, Article Court, to delve into. Your inquiry need go no further than whether or not this is a sincerely held belief with religious import. Your Honor, I think the answer is what you just articulated. I do believe, you know, I've thought a lot about this and as I've worked on the case and preparing for the argument, marriage is a unique, a unique event. If you compare, for example, marriage with communion, you know, in the Christian faith. In the long tradition of the Roman Catholic Church, it's a sacrament. Sure. And I apologize, Your Honor, if I interrupted. It's a sacrament in many denominations. In no sense is it, I'm not aware of any Christian denomination where it's compelled. Right. Exactly. And where the test in Clem would seem to have been perhaps wrong at the time was the suggestion that it needed to be a precept of a religion. Yes. At least we know now that is, that is not the case. Am I correct? That is not the case, Your Honor. Now, I do believe that the test in Clem is valid as a sufficient condition of a substantial burden. If you meet that test, unquestionably, there's been a substantial burden. I don't believe it's valid if intended as a necessary condition. And in a case like marriage, which really is unique in the sense that two individuals generally don't enter into a marriage, even if it's a Christian marriage or or or a marriage that expresses another, any other faith, don't enter into that marriage because they feel compelled to do it. And in fact, there are in most cases of marriage, strong secular motivations for entering into the relationship. But some of those secular motivations may be ethical, they may be considered moral, but they're not part of some systematic theology. Yes, but it or need they be. But it's still a religious exercise in a number of respects. And again, for purposes of the statutory concept. Yes. And I don't mean to focus. In this case, we're dealing with two Christians. They wanted to enter into a Christian marriage. So I don't mean to focus exclusively on Christianity, but that's the case we have. Well, it's but in a sense, it strengthens their case by making it something very much within a mainstream as opposed to some of what we've seen in some cases over the years in prison litigation, where requests are made that perhaps are in the outer reaches. I don't believe this could qualify as in the outer reaches. That's what I'm suggesting. But I do want to try to articulate why it's a religious exercise. And it's a religious exercise. It doesn't matter. As long as they sincerely believe it's a religious exercise, it doesn't matter. We can't go into that, can we? I believe that, Your Honor. I do believe that the argument on the other side is that there was not a religious exercise to be engaged in here. And I don't want to belabor the point, if Your Honors don't have questions about it, I won't. I just don't think we can get into it. I think George has said, it's not a question. It's not something we can get into. And it's a dangerous area of inquiry for courts to start determining what is really part of religious dogma and what is really not part of religious dogma. Right. That's a troublesome exercise. OK, well, then I'll maybe in response, I'll get back into it on rebuttal. I'll move on. In any case, taking it as given that it was a I don't believe that the Clem test is viable as a necessary condition. You have to look to other formulations to try to capture the burden that occurred here. And what happened here is two people wanted to get married. They viewed it as a Christian. Let's assume we let's assume we agree with you. Let's assume that, as I've suggested by my initial question, that Clem is no longer the final word in any event and has questionable viability. Then if we agree with you, aren't we required here to remand to the district court and to allow the district court perhaps the raft of issues here, which we may or may not have time to get into, but solely with respect to the inquiry we're pursuing, then for the district court to allow the government to come forward and demonstrate and address the substantial burden question. Yes. Yes. Yes. I will not. I'll move on to other issues unless there are questions. It may be that you want to hear from the defendants. And then why don't I guess with the question of what level of particularity has to be pleaded, is that your question or do you want to talk about whether there's a protected issue? I have an issue about that. The level of particularity to prove the conspiracy. OK. Well, what what the case law that the defendants cite says is that you've got to identify the conduct that violated the plaintiff's rights. The plaintiffs have done that. Right. There's a de facto ban on denied. So they've identified the conduct that violated their rights. They've identified the specific individuals, at least they've alleged who the specific individuals are. If those individuals want to defend on the ground that they are not the ones who are responsible, that's a fact question. We can get into that in discovery. But in terms of pleading, we've pleaded the specific individuals. The third thing they have to plead, according to the case law that defendants cite, is the what's really being argued on the other side. They have to specifically show who violated the rights, when and how the conduct violated the rights. Was that getting away from notice pleading and into fact pleading? Right. I believe our complaint does all three of those things. The argument that's really being made is, in addition to all those facts that have to be pleaded, the plaintiffs have to plead with particularity the exact meeting or moment when the conspirators got together and explicitly formed their meeting of the minds that they were going to engage in this conspiracy. Aren't we getting ahead of ourselves just a little bit, though? Because isn't the question of whether or not alienage is protected by 1985, subsection 3? The requisite here. And what authority do you have to suggest that? The Supreme Court has been very careful and very circumspect about the protection that they give under 1985, 3. Am I correct? Your Honor, I want to answer that question. If you just forgive me for one minute, I just want to make sure that I've spoken. I just want to finish. I will certainly forgive you, but I don't want to interrupt the train of thought. But as I said, that's a predicate here that we have to reach before we get to the solution. Absolutely. It's a threshold issue that has to be addressed. Just give me two more seconds. I apologize. I just want to make clear, there's no case that says that we have to plead with particularity that meeting of the minds moment. There's not a case that supports that. It's not the law. On Your Honor's question, let me stick with that and have you address, because I'm not sure I have it right at my fingertips here, but what the specific allegations were in your complaint. I had it here this morning when I was looking at this, but what you had specifically alleged with respect to a conspiracy, and hold that up against quick ball and see how it matches and if it matches, and then go to my question about alienation. Sure. Well, first of all, there's the circumstantial evidence that bolstering that is the discussion that Mr. Davis and Ms. Beckford had with the chaplain at Moshannon Valley, who said, yes, marriages aren't allowed here, essentially confirming there is a de facto marriage ban. And he said that the de facto ban existed at the direction of federal officials who had assumed that the chaplain has knowledge of why marriages aren't being allowed at the prison. But the ban applied to everybody there, correct? Well, it did. It did. Okay. And it may be, I don't know, the composition of Moshannon Valley, and I don't think without discovery I could know it. But isn't that alleged? 98%, I think, is the figure? The allegation is at least 98%. It could be 100%. It may be that there are some citizen inmates, and they also are impacted by the conspiracy. But a conspiracy that's directed at a protected class can affect individuals who aren't in the protected class. Especially if, to make this look like an innocent, not motivated at aliens, a ban is applied to everyone, right? So, in other words, if the purpose of the ban is to affect aliens and to prevent citizens from marrying aliens, and it's applied to everyone to make it look neutral, it's going to affect, if there are citizens housed at the prison, it's going to affect them. I don't know if there are any citizen inmates at MVCC. The allegation is simply that almost all, if not all, of the inmates at MVCC are aliens. Did that speak to your question? I hope it did. Let's assume that we resolve the procedural question under Rule 8 and Twitball, against you, that you have inadequately pled. Should we then decline to reach the alienage question for which we have no Supreme Court precedent? No, Your Honor. It's not then going to be before court because it's not been adequately pled. It's been dismissed. Well, I mean, under this Court's precedent in civil rights cases, every effort should be made to allow the plaintiffs to replete, okay? Now, the district court... Yes. Would it then be the reasonable thing to do, an appropriate thing to do, to ask the district court to allow or revisit a question of, I guess, filing a third amended complaint? Is that where we are? Yes. I mean, we would ask for that relief, Your Honor. I mean, the district court didn't hold that the pleadings were insufficient. What the district court held is on the point that Your Honor raised, which is there is no protected class here. Now, that holding, we couldn't cure by amending, and the district court dismissed with prejudice. If the district court had decided on a sufficiency of the pleading, I think we should have been given an opportunity to amend. So I think if Your Honors are inclined to do that, then I think we'd ask for that relief. It would be the second counsel complaint. It might not be necessary if we were to resolve that alienage is an appropriate class. Yes. Because of 1985-3. Yes, Your Honor. Because there would be nothing to amend under those circumstances because the error that we have detected is not one of a procedural nature, but of a substantive nature. Yes, Your Honor. I'm trespassing on your time. If I could just say one other thing, because I'll get into a rebuttal, I assume. But what I wanted to say, Your Honor, is we're dealing with a statute. This is not Bivens. So we're not in a situation where there's a requirement to be hesitant or a presumption in favor of not recognizing a claim. We have a statute. This court said in Lake v. Arnold, the statute needs to be construed broadly. As I read Lake v. Arnold, the statute applies to every discrete and insular minority. So if that's right, then it applies to every class that is entitled to equal protection under the Equal Protection Clause, at least. And that's bolstered by the fact that the statute itself talks about depriving people of equal protection of the laws, which suggests a tie to the Equal Protection Clause. So the statute, which is to be construed broadly, should apply to at least every class that's entitled to protection under the Equal Protection Clause. I agree with you that there's no Supreme Court case saying aliens are protected. In fact, there are very few classes that the Supreme Court has recognized, race, of course, being one of them. That's true, but again, given that we're dealing with a statutory claim, not a bivouac, this is not a judicially created action. It's a statutorily created action. And what the Supreme Court said in Griffin is the statute should be given a sweep as broad as its language. I'm trespassing on your time. I'll sit down. Don't sit down just yet, because I want to give you a minute or two to address the intentional infliction of emotional distress claim that you brought. Does this conduct, is it outrageous enough under Pennsylvania law? This is absolutely outrageous. I mean, if you couldn't marry the person you love, you'd be outraged. So would everybody else. It's outrageous, absolutely. I can go into the... It's got to be intentional infliction. Yeah. It can't be mental distress, which follows from some act which didn't intend that result. Where have you, in the allegation, set forth anything with respect to intent? That is, intentional or reckless? Well, I want to make sure that I'm understanding the question. I do not believe that the law, I think the law requires intentional conduct. I think we've pleaded that. I don't know that the law requires... Pennsylvania has adopted the restatement on IED. Okay? Yes. And I believe that the requisite intent under the second restatement, and I'm just trying to read my own notes, the actor desires to inflict serious emotional distress, or where he knows such distress is certain or substantially certain. Yeah, yeah, yeah. I think you fall short of that. Again, I mean, at the risk of trespassing, we'd ask to the extent that there's a view that the pleadings are insufficient, and that was not the basis for the district court's decision. The district court's decision was we hadn't pleaded the physical injury piece, and I do believe that that analysis... I mean, there's nothing we can do about... I mean, the way the district court understood physical injury, we couldn't plead it. That's true. I don't believe Kasatsky supports that requirement on physical injury that the district court imposed. If the view is that there needs to be more fulsome pleading about intent to cause emotional distress, then we'd ask to replead. I think here if you... Our intention... The allegation here is that there's an intent to deprive people the opportunity to marry. I think a reasonable person would be aware that that conduct is going to cause outrage and distress, I think. But again, to the extent the court's view is the pleadings were insufficient, we'd ask to replead. Thank you, Your Honors. Thank you. Thank you. Good morning. Good morning, Your Honor. My name is Thomas Specht. I'm representing Geo Group and Wigan. I filed a division of time form to separate the time, eight minutes for me and seven minutes for Mr. Howell, who represents the other appellees. I want to get into also the question from the court that they sent the letter on regarding Washington v. Clem. To the extent that I'm using an ecclesiological term, I've all but confessed here that Clem, which I wrote, may not be a correct statement. It may not have been a correct statement of the law at the time, but even if it was, it has been called into serious doubt, and you've heard all of that. Was I wrong then? Am I wrong now? Or as Judge McKee would tell you, I'm almost always wrong. I don't think you're wrong, Your Honor. I honestly believe that Clem is still the law, because if you look at Burwell v. Hobby Lobby, which is the case the counsel referred to, what they were looking at in this case was the penalty, the millions of dollars for failing to get the insurance that the government was requiring them to buy. That's prong two of Clem. And when you also, in addition to that, all the other Supreme Court cases that you referred to in the letter, they're the same thing. What about Mr. Felgel's point that the test that we laid out in Clem may be sufficient, just not necessary? So that situations that come under the definition set out of substantial burden in Clem may be enough in some cases, but it ought not to preclude other cases, which the language of some of the Supreme Court decisions would strongly seem to suggest. Well, I think you have to have some test, or else what the Court is going to be left with is every person that follows a religion in the United States is going to have a veto over something that denies them spiritual fulfillment. That can't be the test, which is, I think, what is being argued here. Why can't it? When you look at what? Well, because you wouldn't be able to run the government. Pardon me? Well, that might be the result of the language and the opinion. And what the Court has always required, it seems to me, and what it still seems to be requiring through Hobby Lobby, through Holt, is that there has to be some sort of penalty or pressure. That's what a substantial burden is. The penalty here is not being able to get married. Well, Your Honor, respectfully, the policy here was not saying you can't get married. What was going on here is the, what has been pleaded is the plaintiff, Mr. Davis, didn't comply with certain conduct regulations. That's disputed, though. And we're hearing, I think, a 1236 dismissal. That doesn't implicate the jurisprudential question that we're grappling with here, does it? Well. I mean, that's a consequence that results in the decision that was made. Well, I think it does. We're trying to get to a legal test. In this respect. You just used the term penalty several times. Right. But the term of art is substantial burden. Right? That's the term of art. But substantial penalties. But the tests that have come down have referred to penalties. Burwell penalty. Those are factual nuances or factual aspects of particular cases. But it doesn't necessarily have to be financial, right? It doesn't. Or penal types of penalties. It doesn't. But it has to be something that would put substantial pressure upon you. And in Clem, and this is where I think in Hobby Lobby, obviously, it was the monetary penalty. In Holt, it was you're going to be subjected to severe disciplinary action if you don't cut your beard. You know, Ramirez was allowing the pastor to place hands on the defendant as he was about to be executed. Why isn't the denial of the right to marry on a par with all of those things in terms of the consequence that follows? I'm sorry. Why isn't the denial of the right to marry, the privilege of having wanted to find it, why isn't that on a par with all of those things? Whether or not my beard's a quarter of an inch or an eighth of an inch. Whether or not my pastor can put his hands on me a minute before I get zapped with enough volts of electricity to rise me off the table and kill me. Why isn't the right to marry at least as great as that? Well, I don't think the right to marry, the right to marry wasn't being, let me put it this way. They weren't being coerced to violate any religious belief, even if they were denied the right to marry. Being prohibited from fulfilling the religious belief. Right, and that has never been, under any case that I could find, what has been defined as a substantial burden by any case. What about Clem then, when he was not allowed to read the entire book or at least read the books today? I think the distinction between this case and Clem would be the religious belief there was the books, I think is what the case says. He wanted to do something. He didn't want to just have books, he wanted to be able to read them. And so he was denied the opportunity to do something that had spiritual or religious significance to him. Just as the parties in this case, the plaintiffs in this case, have been denied the opportunity to engage in a religious exercise that has spiritual and other implications and importance to them. Why is there a distinction between those two in terms of a party being permitted to do something? I would think because the language of the cases have always said you have to be forced to be doing something that violates your belief. They have not pledged that they are being forced to violate their beliefs. There's nothing that they're saying that they're being pressured so much to do that they're going to be violating their beliefs if they... They're prevented from fulfilling a tenet of their religion, and that is manifesting their love and their relations for one another through marriage. That's what they're alleging. They're being denied. And somehow you're saying that that's not as big a deal as the length of a beard, the number of books one can read. I don't think it's ever been held that inconvenience... Not inconvenience. It's not inconvenience at all. You're really denigrating and minimalizing the allegations in this complaint. They're not saying, look, we prefer that we get married. Yeah, we don't get married. We don't get married. We prefer to get married. That's not what this case is about. Well, I think it is because... That's not what's being alleged. It is because... Did you read the complaint? Yes, they admitted... Do you want to hear my questions, or do you want to just kind of... We can come back and do a Zoom thing later on. I'm sorry. You said you read the complaint. Yes. And now you're saying that they complained that it was just kind of a minor inconvenience, not the words you're using, but it's tantamount to what you're arguing, that they're being somewhat inconvenienced by not being able to marry. That's not what the case is about. They've admitted in their brief that they are not... Their religion does not require them to marry. And by the test of Clem, by the test of... But we know that it does not have to be, the it being the practice, the exercise, does not have to be a tenet of religion. It doesn't have to have a place in the systematic theology of a particular religion. We know that. That's clear from the jurisprudence. I agree, Your Honor. I agree with that. It has to have some religious significance. And the parties, the plaintiffs, have to believe, sincerely believe, right? Correct. That it is a religious exercise. So why has that not been demonstrated, at least by the pleadings here, that marriage, with its long lineage and history and tradition, in numerous religious traditions, not enough here, especially compared, say, to Clem, where he said, I need to read four books a day, which has no place that I know of within Islamic tradition. I understand your question, Your Honor. But I guess maybe I'm reading their pleadings in their brief differently because everything that they say is that it's not compelled by the religion. And they're not being forced to do something that's... Not to do something that's compelled by the religion. That's where I'm seeing the distinction. And maybe Your Honors aren't, but that's what I believe the case law talks about. But the burden, the term burden, substantial burden, doesn't have to be compulsion. Why do you think that that necessarily implies compulsion? Well, it has to at least be something that you're having pressure to violate a belief. And if you're not compelled to do that, then how could you have the substantial pressure to violate a belief? That's what I'm talking about, Your Honor. If it's not something that you're compelled to do, if the religion even requires, then how could there be pressure to violate a belief? You're taking burden out of the equation. And they're saying that through their religion gives them a certain result. If the relationship is one that is marriage, that's not there when it's something other than marriage. And I don't know how you can read the complaint and not get a burden out of that. But you're saying that burden is not the test. I'm saying it may be a burden, but it's not a substantial burden according to the tests that have come down. Well, then we're back into Hobby Lobby language. Right. And that was the question we lived with. Right. I'm not sure why it has to be a substantial burden. And to the extent that it's a substantial burden, who measures that substantial burden? Is it from the point of view of the worshiper who says this is a substantial burden to me? Or is it the court that says, well, you know, that's not a big deal. Take it easy. Well, look, you're eating some unleavened bread and you're sipping some stale grapes. That can't be a substantial burden. Is that for the court to decide? I think the court has to decide whether or not it's a substantial burden. Otherwise, again, all we're saying is that if you have a sincere belief, that's enough, which that's never been a test. A sincere belief that burdens. Well, I still think the court has to determine the substantial burden question. I don't think that that's anything that's been abdicated by any case law that's come out. And I see my time is up, and I respectfully rely upon the arguments in my brief for the other parts of that. One more thing for Hobby Lobby, and that is that Congress mandated that this concept we're talking about the burden quote. And this is little quoting the statute beacons truly in favor of a broad protection of religious exercise to the maximum extent permitted by the terms of this chapter in the Constitution. But you're saying the key word there is exercise. And there's nothing here which impacts the exercise because they're not being compelled to do something. They're not being compelled. Exactly. Thank you, Your Honor. I'm sorry I was maybe not getting that across as clearly as I wanted to before. Thank you. Thank you. Afternoon. Good morning. Good morning, Your Honors, and may it please the Court. Adam Hallowell for the Federal Appellees, Donna Melendick, and David O'Neill. This Court should affirm for two main reasons. First, Melendick and O'Neill have qualified immunity on numerous grounds under both RFRA and Section 1985. And second, this complaint fails under Twombly-Nickball as to those two defendants because it does not plausibly allege that they were personally involved in any violation of either statute. And I'd like to lead with that point. This complaint has very few well-pleaded allegations against either of these two federal officials, none at all against Mr. O'Neill. And the only well-pleaded allegations as to Ms. Melendick are in paragraph 41 of the complaint. And that paragraph says that Davis sent a request to Ms. Melendick's office in Washington, D.C., and that either Ms. Melendick or a delegated member of her staff responded to that request. So that does not even allege that Ms. Melendick had any decision or action involved in making that response to Mr. Davis. It doesn't even allege that she was personally aware of that request to her office. And that's not enough for liability under either RFRA or Section 1985. It certainly doesn't show that she conspired with anyone else, as Section 1985 requires. As to personal involvement, I'm looking at paragraph 10 of the complaint, which alleges, based on research and knowledge gained from MVCC employees, the individuals who directed MVCC to deny inmates the right to marry include the administrator of the BOP privatization branch, which oversees private prisons such as MVCC, Ms. Melendick, and the official overseeing deportation from that facility, David O'Neill, the assistant field officer director of the Philadelphia Field Office of ICE DHS. So that's what you're saying is insufficient under Twombly and Iqbal for purposes of alleging personal involvement. That's correct, Your Honor. Those are conclusory allegations that Twombly and Iqbal tell us are not entitled to a presumption of truth under Rule 12 at the pleading stage because they just restate the elements of the civil claim. They just restate there was a conspiracy. So if the plaintiffs were to amend this complaint such that the research and knowledge gained were fleshed out with specifics, I'm not asking you to agree that hypothetically something might be sufficient, but that would at least be a start in your view since this seems to be a general reference that leads to the conclusion. Certainly it would have been better if they had fleshed out these alleged facts that they're referring to. I mean, they make this vague reference to the facts and knowledge. It would have been better if the court and the defendants had known what they were referring to here. So, you know, as to whether the court should have allowed them to replead, we think they should not, and I can explain further as to that given that we're on a third complaint in this litigation seven years into this case. But certainly on the complaint as now, they did not spell out any of these facts and knowledge. And the other allegations in, say, paragraphs 53 to 61 of their complaint, just saying again, these two defendants conspired, they directed, you know, the creation of this policy. Again, this is very close to the allegations that were rejected in Twombly and Iqbal. And another place in which this complaint falls short is that it doesn't provide any information about the content of that request  and specifically, it doesn't allege that that request described his citizenship status or his religious views at all. These are key pieces of information for both of these statutes. I understand your point about the vintage of this case and several iterations of a complaint. But if, just if, we were consistent with some of the questioning and answers of a while ago of Mr. Fargo, that this case should go back for a number of reasons, including the development of the government's position as a substantial burden, or the government's position with shifting of the burden rather, what would be the downside to directing the court to permit amendment or allowing the court in any event to decide whether or not to permit an amendment? I would say that as to these two defendants, Mel and Dick and O'Neill, they are entitled to dismissal of this complaint with prejudice at this point because this complaint, this counseled complaint, Second Amendment complaint filed four years into this litigation, could have provided details about what Mr. Davis said in this request, whether it contained any specification of his religious views. And it did not provide any of that information. There's no suggestion that Ms. Mel and Dick knew or could have known that this had a religious significance to Davis and Beckford at any point. And so that's why the complaint fails as to her factually in a way that can't be cured by another counseled complaint in the district court. But even setting that aside, these defendants have qualified immunity here because there is no clearly established law, there was no clearly established law in 2012 to 2016, that's the timeframe that we're talking about here, that suggests that a person could substantially burden a plaintiff's rights if they had no idea of what that plaintiff's religious views were, no idea that this was causing any kind of burden, let alone a substantial burden, on those religious rights. And that's something that's not alleged anywhere in this complaint as to any of these defendants. And that's a theme that this court has struck in the Ansbach case under the free exercise clause, as well as in the very recent Adorers case from my letter to the court, which was a RFRA case. And that makes clear that if the plaintiff does not speak up and say this is, you know, what you're doing is imposing a religious burden on me, then RFRA and the free exercise clause aren't violated by a defendant who, without any knowledge of the religious implications of that official action, takes a government action. And so if we were to determine that the parties are entitled, the defendants, the federal defendants are entitled to qualified immunity, that would obviate the need to reach the statute of limitations issue as to that one. It would. It would. Correct. Now, we, you know, we stand by our position in the briefs on the statute of limitations. You know, I think the text of Rule 15 itself may be in a little bit of tension with the advisory committee notes. But this, you know, this court has not held that the period referred to in Rule 4 to describe the language, you know, to quote from Rule 15, means any extension that's granted by the district court, in addition to the flat now it's 90 days requirement. You're arguing it doesn't relate back. It does not relate back. It does not allow. Their argument is that the only reason it could relate back is because the district court, in fact, it did not extend the time under Rule 4. That was a subject of the prior appeal. So that's another reason why it shouldn't relate back. But the district court here did. We say that it's still the 90 days of Rule 4 that are a limit on any notice to a party who has not been named in the complaint. You know, you would have to show that that party had notice and knew that they should have been named as a party at that point. Because otherwise you have the inequitable situation you have here of a defendant who first becomes aware of the litigation long after the statute is run. So that's our position on the statute of limitations. But because of the qualified immunity issue and the Twombly-Nickball issues, this court should affirm as to both of these defendants. If we agree with you on qualified immunity, we don't need to go any further, right? That's right. That's right. And I would also just notice to the court's question on Washington v. Clem, that also incorporates qualified immunity here because this court reaffirmed it. The tension that has been suggested in questions and answers between Clem and subsequent Supreme Court jurisprudence is suggestive of circumstances that would make it less than obvious to the federal defendants as to what the condition of the law was, as I assume what you're suggesting. Absolutely. I mean, this court reaffirmed the Clem test verbatim in MAC in late 2016 after Davis' release date. So for that reason, qualified immunity would apply on that ground as well. If there are no further questions. Thank you. There are five things that came out of the defendant's presentation. I'm going to do my best. I may have to ask for your indulgence on time. I want to start with the idea that we've conceded that the marriage wasn't compelled. It's true. It wasn't compelled. But if you look at Ramirez v. Collier, which is in that line of cases involving access of clergy to the execution chamber, no allegation in those cases, any of those cases, that that's a compelled piece of the religion of the inmate being executed. Would you agree that the general term substantial burden does not necessarily imply or require compulsion? The text of the statute says that. It says it applies to any exercise of religion. I mean, the facts of a particular case may involve compulsion. On the other hand, it may deny an opportunity of some kind that is religious expression. That's what Ramirez was. I apologize, Your Honor. I'm sorry. I'm saying that's what Ramirez was. It was denying an opportunity. It wasn't a compulsion of the laying down of hands. Yes. And now in Hobby Lobby, there is the element of violation. And Your Honors didn't mention this in the court's letter. But if you look at Murphy v. Collier, which is in that same line as Ramirez v. Collier, there's a dissent by Justice Alito where he makes this point that in this line of cases, we're dealing with something that's preferred as opposed to compelled. And he distinguishes that line of cases from Hobby Lobby on that basis. If I could address Anspach, you know, which is a First Amendment case. You know, what this court said in Mack is that RFRA applies to – RFRA need not – the burden need not be intentional.  So there does not – under RFRA, there does not have to be intent to burden the plaintiff's religious faith. In Anspach, which is a pure First Amendment, that involved the city of Philadelphia, which is not a federal actor, so RFRA didn't apply, didn't involve land use or prison, so RLUIPA didn't apply. So it's a purely First Amendment case. In that case, essentially what this court said was is, you know, somebody comes into the clinic. They think they're pregnant. They go through counseling. Maybe they get pills to deal with the situation. And that's the city's policy. The city's entitled to follow its policy unless there's some reason to think – you know, in this particular case, the plaintiff never articulated that they had religious objections to the pills. Now, in a First Amendment context, that makes sense. But in RFRA, okay, which expressly applies to general rules that aren't necessarily targeted at religion, you don't need to have intent, you don't need to have knowledge. On Twombly and Iqbal, we've asked to replead if Your Honors think the complaint is insufficient. We did flesh out the allegation that Your Honor read to some extent, because in part that's referencing the discussion with Chaplain Roberts. And Chaplain Roberts did expressly say this de facto ban on marriage is at the prison, at the direction of federal officials. Now, there are fact issues that can be gotten into on discovery and summary judgment, as to who those officials are, but we're at the pleading stage right now. Qualified immunity, very quickly, because I know I'm out of time. Qualified immunity, the question is, is the right clearly established? In the case of – and I understand Your Honor's question about, you know, the existing framework under CLEM. But look, the qualified immunity here is a little bit different than in, for example, a 1983 case, where you're dealing largely with decisional law. Here we have a statute. The statute itself, the text of the statute, puts the defendant on notice. So qualified immunity works a little bit different. The statute says what is or is not clearly established. And then lastly, if I could, on Rule 15, look, it's true. Your Honors, this Court has never held that Rule 15, that the time period under Rule 4M that's referenced in Rule 15, that it includes any extensions granted by the district court. But the advisory committee notes do say that the period under Rule 15 – pause as I've sort of worked up. The advisory committee notes say that the time period under Rule 4M should include extensions granted by the district court. That is the consensus in the district courts in this circuit that it does. Now, in this case, we have a very odd situation, and this is yet another kind of unique issue that's presented by this case. I have not been able to find another case presenting this issue. In this particular case – and I really do apologize that I'm going so long here. This is an important case with a long history. So what – I'm not aware of a case presenting this issue. But in this case, we've got this odd situation where what the district court did wrong was not consider whether there should be an extension under Rule 4M. And this court reversed the dismissal of the agency defendants on that basis the last time. And so implicitly what the court said is there should have been an extension of time under Rule 4M. And in a situation like this where there should have been an extension of time, I think what that means is when the agency defendants appeared in the case in January of 2018, there should have been some reasonable amount of time from that point to effect service. And I believe there are fact issues. And I hope I'm not – I really do believe I'm trespassing on your time. I'm sorry, Your Honor. What I just want to say is there are fact issues as to whether – I'm sorry, Your Honor. There are fact issues as to whether Ms. Malindic knew or should have known or would have known within that 4M time period of the existence of the action. So that deals with relation back. And, again, I'm sorry and I appreciate all of your time and thank you. We very much appreciate your pro bono efforts. Yes. Now, of course, I mean, we were not appointed by the court in this. We were appointed in the last appeal. But we've stuck with the case. Thank you, Your Honor. Thank you for doing this. And my old friend Paul Titus from Schneider would have enjoyed this case. Absolutely. And, Your Honor, we also advocated for the test in Clem. Schneider represented the inmate in that case. So we had some involvement in advocating for the test. If the test is wrong, you may have steered him astray. Thank you, Your Honors. Thank you so much. I think the panel would like to have a transcript prepared of this oral argument. I'm not sure how the bill is divided on that. That's above my pay grade. They don't have the money. No. I believe they do. I believe they do. Okay. We'll have the appellees pay for the costs. You guys can split it. Thanks. Thank you, Your Honor. Thank you.